*Westfield Insurance Company v. Michael Gilliam*
Misc. No. 4, September 2021 Term


**Motor Vehicle Insurance – Uninsured Motorist Benefits – Statutory Offset for Benefits Recovered Under Workers' Compensation Claim**.  When a person injured in an automobile accident during the course of employment is eligible for benefits under both the workers' compensation law and the uninsured motorist coverage of a motor vehicle insurance policy, Maryland law seeks to avoid a duplication of benefits by means of an offset provision in the statute governing motor vehicle insurance.  Under Maryland Code, Insurance Article, §19-513(e), a motor vehicle insurer that pays uninsured motorist benefits to an injured person may deduct from those benefits any benefits recovered by the injured person as a result of a workers' compensation claim for which the workers' compensation insurer has not been reimbursed.

**Motor Vehicle Insurance – Uninsured Motorist Benefits – Statutory Offset for Benefits Recovered Under Workers' Compensation Claim – Medical Benefits**.  As part of benefits provided under the workers' compensation law, a workers' compensation insurer is to pay medical benefits on behalf of a claimant "in the amount that prevails in the same community for similar treatment of an injured individual with a standard of living that is comparable to that of the covered employee."  Providers must accept those amounts, set by the Fee Guide of the Workers' Compensation Commission, in satisfaction of the full cost of treatment.  An injured person who has received such medical benefits under the workers' compensation law may also seek benefits under the uninsured motorist coverage of an appropriate motor vehicle insurance policy.  Assuming that the fair and reasonable value of the medical treatment exceeds the payments made by the workers' compensation insurer according to the Fee Guide, that difference is not part of the offset against uninsured motorist benefits under IN §19-513(e), because that amount was not recovered by the claimant and is not capable of reimbursement to the workers' compensation insurer.

United States District Court
for the District of Maryland
Case No. 1:19-cv-03550-SAG
Argued: October 8, 2021

IN THE COURT OF APPEALS
OF MARYLAND

Misc. No. 4

September 2021 Term

_____

WESTFIELD INSURANCE COMPANY

v.

MICHAEL GILLIAM

_____

Getty, C.J.,
McDonald
Watts
Hotten
Booth
Biran
Gould,

JJ.

_____

Opinion by McDonald, J.

_____

Filed: February 8, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The United States District Court for the District of Maryland has certified to this Court, pursuant to statute and rule,[1] a question of law regarding the calculation of the damages payable to an injured person under the underinsured motorist provision of a motor vehicle insurance policy ("auto policy") when a workers' compensation insurer has paid the injured person's medical expenses at rates set by the State Workers' Compensation Commission. Maryland law permits the auto policy insurer to reduce its payment of benefits under the underinsured motorist coverage to the extent that the injured person has "recovered benefits under the workers' compensation laws … for which the provider of the workers' compensation benefits has not been reimbursed."[2]

The case before the federal district court arose after Michael Gilliam was injured in an automobile accident while driving in the course of his employment. He received payments from his employer's workers' compensation insurer and the other driver's liability insurer, and now seeks to recover, from the insurance policy covering the vehicle he was driving (issued by Westfield Insurance Co.), the amounts by which the other driver was underinsured. The health care providers who treated his injuries had generated bills in face amounts greater than the amounts set by the Workers' Compensation Commission, but (as required by Maryland law) accepted payments at those lower amounts in full satisfaction for their services. The question asked of this Court is whether the difference between the amount of those bills – or perhaps more precisely, the fair and reasonable value

---

[1] Maryland Uniform Certification of Questions of Law Act, Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-601 *et seq*; Maryland Rule 8-305.

[2] Maryland Code, Insurance Article ("IN"), §19-513(e).

of those providers' services – and the payments made by the workers' compensation insurer constitutes a "benefit" that the injured person has "recovered" under the Workers' Compensation Act that is to be offset against any recovery the person would obtain from the underinsured motorist coverage of the auto policy.

For the reasons set forth in this opinion, we hold that only the amount that the workers' compensation insurer actually paid for medical expenses is part of the statutory offset against underinsured motorist benefits. Thus, a difference between a higher face amount billed by a health care provider and the amount actually paid by the workers' compensation insurer is not part of that offset.

# I

## Legal Landscape

The question of law certified by the federal district court arises from litigation over insurance coverage for a motor vehicle tort. It concerns damages related to the plaintiff's resulting medical treatment and involves the interplay between the State workers' compensation law and motor vehicle insurance law as they provide compensation for the victim of an automobile accident. It thus arises against the backdrop of tort and contract law. To set the stage for that question – and our answer – we first review its legal context.

### A. *Damages for Health Care Treatment Occasioned by a Tort*

An individual who is the victim of a tort may recover compensatory damages from the person responsible for that tort – commonly referred to as the tortfeasor. *Anne Arundel County v. Reeves,* 474 Md. 46, 66 (2021); Restatement (Second) of Torts §903. Such damages include, among other things, compensation for medical treatment that the victim

2

obtained – or will obtain – as a result of the tort. Restatement (Second) of Torts §924(c) & comment *f.* As a general rule, it does not matter if those health care services were initially financed by someone other than the victim – for example, the victim's health care insurance, other insurance, or a relative. *Plank v. Summers*, 203 Md. 552, 562 (1954). The tortfeasor remains responsible for paying the victim the "fair and reasonable" value of the health care services that the victim needed as a result of the tort. *Shpigel v. White*, 357 Md. 117, 128-29 (1999).

1.      The Fair and Reasonable Value of Health Care Services

Determining the fair and reasonable value of health care services is not easy. There are often two readily available benchmarks: (1) the amount billed by health care providers and (2) the amount actually paid – whether by the patient or by some other payor.[3] But those two benchmarks seldom align. And neither figure alone may represent the actual value of the services. *Higgs v. Costa Crociere S.P.A. Co.*, 969 F.3d 1295, 1311-14 (11th Cir. 2020). The fair and reasonable value of health care services can be quite distinct from the amounts billed by health care providers or the amounts actually paid to the providers by the tort victim or other payor. *Shpigel*, 357 Md. at 128-29.

In many instances the nominal list price generated by a health care provider billing service may be a less meaningful indicator of market value than the MSRP[4] sticker on a

_____

[3] To reduce the expense of litigating cases in which smaller amounts are in controversy, a statute provides an evidentiary shortcut for admitting provider bills to establish the fair and reasonable value of medical treatment in those cases. CJ §10-104(e); *see James v. Butler*, 378 Md. 683 (2003). That statute does not apply to this case.

[4] "Manufacturer's suggested retail price."

new car in an auto showroom.[5]  *See* George A. Nation III, *The Valuation of Medical Expense Damages in Tort: Debunking the Myth That Chargemaster-Based "Billed Charges" Are Relevant to Determining the Reasonable Value of Medical Care*, 95 Tul. L. Rev. 937 (2021).  That is because, among other things, health care billing involves nominal prices seldom actually paid, alternative charges negotiated between providers and insurers, and rates set by government entities.  "The complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services."  *Stanley v. Walker*, 906 N.E.2d 852, 857 (Ind. 2009).  And, "[b]ecause this market structure may obscure the real value of medical services, courts have struggled to square tort law with the realities of modern healthcare finance."  *Higgs*, 969 F.3d at 1309.

Under Maryland law, the amount of a bill or an actual payment is inadmissible without evidence to prove that the bills or payments actually reflect the "fair and reasonable" value of the services.  *See Shpigel*, 357 Md. at 128; *see also Brethren Mut. Ins. Co. v. Suchoza*, 212 Md. App. 43, 57 (2013) (holding that trial court properly excluded evidence of actual payments when record contained no expert or other evidence that they reflected the fair and reasonable value of providers' services).

---

[5] Perhaps in recognition of this, a statute governing medical malpractice cases limits a judgment against a health care provider for the plaintiff's medical expenses incurred as a result of malpractice to what was paid, or is obligated to be paid, by or on behalf of the plaintiff rather than what the plaintiff was billed.  CJ §3-2A-09(d).

2.      Collateral Source Rule

As a general rule, whatever value can be determined for health care treatment required as a result of a tort, "a plaintiff is entitled to but one compensation" for the loss, regardless of whether there are multiple causes of action or multiple tortfeasors. That principle is sometimes called the "one recovery rule." *Beall v. Holloway-Johnson*, 446 Md. 48, 70 (2016); *Reeves*, 474 Md. at 67.[6] And, generally, under a sometimes countervailing principle known as the "collateral source rule," the tortfeasor should be responsible for that recovery, regardless of whether the victim has another source of compensation. *Haischer v. CSX Transp., Inc.*, 381 Md. 119, 132 (2004).[7]

The label "collateral source rule" actually denotes two related common law "rules": one is a substantive principle of damages; the other is an evidentiary rule. The substantive principle of damages provides that an injured person is ordinarily entitled to full compensation from the tortfeasor, regardless of any compensation the person has received from sources unrelated to the tortfeasor with respect to the same injury. *Haischer*, 381 Md. at 132. Such collateral benefits may include insurance payments, negotiated lower rates, statutory benefits, or simply an affluent family member's goodwill. *See* Restatement (Second) of Torts §920A, comment *c* (providing examples of collateral benefits not subtracted from the plaintiff's recovery from the tortfeasor).

---

[6] The one recovery rule originated in English common law. *Gunther v. Lee*, 45 Md. 60, 66-67 (1876).

[7] *See also St. Louis v. Beckles*, 81 Md. App. 41, 52 (1989) (describing the collateral source rule as an exception to the one recovery rule).

The primary purpose of the collateral source rule, as substantive law, is to ensure that a tortfeasor does not escape liability by enjoying a benefit accruing to the injured party. *Haischer*, 381 Md. at 132; *see also* Restatement (Second) of Torts §920A, comment *b.* Thus, a plaintiff may recover damages for a harm for which the plaintiff has already been compensated and, as a result, in some instances be made "more than whole." *Higgs*, 969 F.3d at 1310. Given a choice between a windfall for the tortfeasor and a windfall for the tort victim, the law favors the victim. In addition, to the extent that the collateral source is an insurance policy, the rule favors the maintenance of insurance. *Haischer*, 381 Md. at 132. In that sense, the rule ensures that a plaintiff is not penalized for prudence.

In support of that substantive principle of damages, the evidentiary aspect of the collateral source rule ordinarily renders inadmissible evidence that a plaintiff received compensation from a third party. *See Eastern Shore Title Co. v. Ochse*, 453 Md. 303, 341-43 (2017) (discussing application of collateral source rule and exceptions to the rule).

The matter becomes more complicated when the tort is an automobile accident to which motor vehicle insurance applies – particularly when the tortfeasor's liability coverage is inadequate and the tort victim must look to the underinsured motorist coverage under the policy applicable to the victim's vehicle. The matter becomes yet more complicated if the accident occurs in the course of the victim's employment and a workers' compensation insurance policy comes into play. In such a case, the victim will typically first seek benefits under the workers' compensation policy. We turn to that law next.

6

***B.***      ***Medical Benefits Paid by Workers' Compensation Insurance***

    1.      Generally

The Maryland Workers' Compensation Act is intended to ensure that employees receive sufficient and timely compensation for work-related injuries and occupational diseases regardless of fault. As amended and recodified since its initial enactment more than a century ago,[8] the law is now codified in Maryland Code, Labor & Employment Article ("LE"), §9-101 *et seq.* The statute is to be construed liberally to achieve its remedial purpose. *Reger v. Washington Co. Board of Education*, 455 Md. 68, 96 (2017); *see also* LE §9-102.

The Workers' Compensation Commission ("Commission") administers the law. Benefits under the Act are generally paid by an insurer with whom an employer contracts or by a self-insured employer.[9] For simplicity, in this opinion, we shall refer to a payor of workers' compensation benefits as the "WC insurer."

    2.      Medical Benefits

As part of the compensation provided by the law, the WC insurer may be required to provide and pay for health care services for the injured employee occasioned by the work-related injury or occupational disease. LE §9-660. The Act authorizes the

---

[8] The predecessor of the current statute was enacted in 1914. Chapter 800, Laws of Maryland 1914.

[9] In certain circumstances, the Subsequent Injury Fund or the Uninsured Employers' Fund may pay benefits under the Act. *See* LE §9-801 *et seq.*; §9-1001 *et seq.*; §10-201 *et seq.*; §10-301 *et seq.* Based on the facts presented to us in the certified question, those circumstances do not pertain to this case.

Commission to oversee and adopt regulations concerning the provision of health care services and the payment for those services. LE §§9-662, 9-663.

The fees and other charges for medical services approved by the Commission are to be limited to "the amount that prevails in the same community for similar treatment of an injured individual with a standard of living that is comparable to that of the covered employee." LE §9-663(b)(2). The Commission has adopted regulations concerning compensation for health care services since the inception of the workers' compensation statute. *See* COMAR 14.09.08.[10] The allowable fees and charges are regularly updated and published in the Commission's Guide of Medical and Surgical Fees, commonly referred to as the "Fee Guide." *Falik v. Prince George's Hosp. & Med. Ctr.*, 322 Md. 409, 414-17 (1991). Those fees and charges may not always equal the rates prevailing in a particular locality, but are not to exceed them. *Id.* at 415.

A health care provider that treats an injured individual as part of the individual's benefits under the Act may not charge more than the amounts set by the Commission in the Fee Guide without the Commission's approval. LE §9-731(a)(1)(ii). This provision is intended to "protect[] the economic integrity of injured employees by preventing unreasonable or excessive charges for health care services." *Queen v. Agger*, 287 Md. 342, 346 (1980).

---

[10] Those regulations derive the specified fees from a number of sources, including the federal Center for Medicare and Medicaid Services and the State Health Services Cost Review Commission.

8

3.     Coordination of Workers' Compensation Benefits with Other Benefits

When an employee covered by the law incurs a work-related injury, the WC insurer is to pay benefits under that law to the covered employee. However, the workers' compensation law "neither excuses third-parties from their own negligence nor limits their liability." *Great Atl. & Pac. Tea Co. v. Imbraguglio*, 346 Md. 573, 583 (1997).

If an injured employee brings an action against a tortfeasor related to the incident underlying the employee's workers' compensation claim, the collateral source rule excludes evidence that the plaintiff previously received workers' compensation benefits.[11] Restatement (Second) of Torts §920A, comment *c*; *Ochse*, 453 Md. at 341-42. However, the WC insurer is subrogated to the employee's claim against the tortfeasor and has a statutory lien on any recovery with respect to that claim in an amount equivalent to the workers' compensation benefits paid. LE §9-902(e)-(f).[12] The employee must reimburse the WC insurer out of the monetary damages awarded from the tortfeasor (minus court and attorney's fees). *Id.* The employee may keep the balance of the damages awarded. LE

---

[11] Typically, a person injured during the course of employment pursues a workers' compensation claim before resolving a tort claim against a third party or, as in this case, before seeking recovery under the underinsured motorist coverage of a motor vehicle insurance policy. *See* Clifford Sobin, 2 Maryland Workers' Compensation (Sept. 2021 update) §25:21.

Some types of damages that may be recoverable in a tort action are not included in the benefits that may be recovered through a workers' compensation claim – for example, pain and suffering and loss of consortium. *See, e.g.*, LE §§9-101(e)(1), 9-601 *et seq*.

[12] Under LE §9-902, a WC insurer that pays benefits to an employee may bring an action against the tortfeasor. If the WC insurer does not do so within two months of an award under the workers' compensation law, the employee or the employee's dependents may pursue an action against the tortfeasor. LE §9-902(c); *see Erie Ins. Co. v. Curtis*, 330 Md. 160, 164 (1993).

§9-902(e). This subrogation right serves the legislative goal of "protect[ing] *both* the employee *and* the employer by ensuring that a third party tort-feasor will not escape liability by having another pay its debt." *Podgurski v. OneBeacon Ins. Co.*, 374 Md. 133, 148 (2003) (emphasis in original). The statutory lien also avoids a situation where an injured employee receives "a windfall recovery from both sources for the same damages." *Parry v. Allstate Ins. Co.*, 408 Md. 130, 136 (2009).

It is sometimes in the WC insurer's interest to accept less than the full amount of a lien in satisfaction of the lien as part of the employee's settlement of a claim against a culpable tortfeasor. *See* Richard Gilbert, *et al.*, Maryland Workers' Compensation Handbook, §15.07[7]; Clifford Sobin, 2 Maryland Workers' Compensation (Sept. 2021 update) §25:21 ("Many employer/insurers will agree to reduce their lien to less than the statutory lien if there is a significant issue which may impair the ability to successfully prosecute the third party claim."); *cf.* 5 U.S.C. §8132 (providing, in federal workers' compensation scheme, for federal government lien on any third-party recovery by claimant beneficiary, but allowing beneficiary to retain at least one-fifth of that recovery after deduction of legal fees).

The WC insurer's statutory lien does not apply, however, to a particular source of recovery of the tortfeasor's liability pertinent to this case – uninsured or underinsured motorist coverage under a motor vehicle insurance policy. *Erie Ins. Co. v. Curtis*, 330 Md. 160, 169 (1993). Instead, the benefits provided pursuant to the workers' compensation law and those provided pursuant to compulsory motor insurance law are coordinated differently, as we explain in the next section of this opinion.

## C.    *Underinsured Motorist Coverage*

### 1.    Generally

In Maryland, an owner of a registered motor vehicle must carry prescribed minimum levels of liability and other types of auto insurance. Maryland Code, Transportation Article ("TR"), §§17-103, 17-104; IN §19-501 *et seq.* Among the types of insurance included in a motor vehicle policy is uninsured motorist ("UM") coverage. TR §17-103(b)(4); IN §19-509. It is well-settled that UM coverage includes coverage for accidents caused by underinsured motorists – what we shall refer to as "UIM" coverage – and the phrases "uninsured motorist" and "underinsured motorist" are often used interchangeably. *Connors v. Gov't Emps. Ins. Co.*, 442 Md. 466, 474 n.4 (2015); *Swartzbaugh v. Encompass Ins. Co.*, 425 Md. 614, 617 (2012).[13] This Court has frequently observed that this coverage is to be "liberally construed to ensure that innocent victims of motor vehicle collisions are compensated for their injuries." *E.g.*, *Connors*, 442 Md. at 475 (quoting *Brethren Mut. Ins. Co. v. Buckley*, 437 Md. 332, 347 (2014)) (internal quotation marks omitted).

UM/UIM coverage aims to "provide an injured insured with resources equal to those which would have been available had the tortfeasor carried liability coverage equal to the amount of uninsured motorist coverage which the injured insured purchased from his own insurance company." *Connors*, 442 Md. at 475 (quoting *Waters v. U.S. Fidelity & Guar.*

---

[13] In 2017, after the incident giving rise to this case, the General Assembly provided an option for a vehicle owner to purchase "enhanced underinsured motorist coverage." Chapters 20, 815, Laws of Maryland 2017, *codified at* IN §19-509.1. That provision does not pertain to this case.

11

*Co.*, 328 Md. 700, 714 (1992).[14]  It is often referred to as a form of "first-party coverage," based on the insurance contract under which the UM/UIM insurer directly covers the injured insured person when "third-party coverage" is inadequate – *i.e.*, "the at-fault tortfeasor has no liability insurance or insufficient insurance funds."  *TravCo Ins. Co. v. Williams*, 430 Md. 396, 403 (2013).  However, this coverage also has aspects of third-party coverage, as it is based not only on the insurance contract, but also on a showing of fault of the alleged tortfeasor.  *See* Andrew Janquitto, Maryland Motor Vehicle Insurance §8.5 at 323-24 (3d ed. 2011).

> 2.  Coordinating Workers' Compensation Benefits and UM/UIM Benefits

An employee who receives workers' compensation benefits as a result of an automobile accident during the course of employment may also have a claim against the alleged tortfeasor and, if the tortfeasor's liability coverage is inadequate, a claim for UM/UIM coverage under the relevant motor vehicle insurance policy.  In that case, the benefits provided by the WC insurer may overlap those provided by the tortfeasor's liability policy and the UM/UIM coverage.

As noted above, the WC insurer has a statutory lien against any recovery from the tortfeasor or the tortfeasor's liability insurer.  However, as also noted earlier, the statutory lien under the workers' compensation law does not extend to a recovery based on UM/UIM coverage.  Instead, the State insurance law provides that UM/UIM benefits are reduced as

---

[14] To the extent that the injured person is able to obtain compensation from the tortfeasor, or the tortfeasor's insurer, UM/UIM benefits are reduced.  IN §19-509(g).

a result of the claimant's receipt of worker's compensation benefits. The statute provides

for an offset against UM/UIM benefits as follows:

> Benefits payable under the coverages described in … [IN §] 19-509 [uninsured motorist coverage] of this subtitle shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed.

IN §19-513(e).[15] As is evident, this statute offsets UIM coverage benefits by the amount

of workers' compensation benefits recovered by the employee for which the WC insurer

has not been reimbursed.[16] Like the WC insurer's statutory lien on compensation received

from a tortfeasor or the tortfeasor's liability policy, IN §19-513(e) serves to avoid "the

duplication of benefits" provided to the employee. *State Farm Mut. Auto. Ins. Co. v. Ins.*

*Comm'r*, 283 Md. 663, 675 (1978).

## D.      *Some Principles to Apply*

The discussion above yields the following principles, some in tension with each

other, pertinent to our decision in this case:

---

[15] IN §19-513(e) also provides for an offset against other coverage under a motor vehicle insurance policy, known as personal injury protection ("PIP") coverage, under IN §19-505. The offset against PIP benefits is not part of the question before us.

[16] This provision applies with respect to the entire UM/UIM coverage benefits and can thus offset elements of a UM/UIM recovery that are not compensable under the workers' compensation law, such as damages for pain and suffering. *Parry v. Allstate Ins. Co.*, 408 Md. 130, 142-43 (2009) (quoting *Hines v. Potomac Electric Power Co.*, 305 Md. 369, 376-77 (1986)).

1 – Although the victim of a tort is entitled to only one recovery for the injuries incurred, a wrongdoer – *i.e.*, a tortfeasor – should be responsible for the damages caused by the tortfeasor's conduct and should not benefit from the victim's prudence.

2 – The workers' compensation and UM/UIM laws are to be liberally construed to compensate an injured person, but any construction of those laws must be consistent with the statutory language and legislative purpose.

3 – Under UM/UIM coverage in a motor vehicle insurance contract, the insurer steps into the shoes of the tortfeasor and, subject to policy limits, is to provide the remedy that would otherwise be provided by a similarly-insured tortfeasor.

4 – Consistent with the one recovery rule, duplication of benefits is avoided through subrogation, liens, and offsets.

The certified question in this case concerns the application of the offset provided by IN §19-513(e) with respect to medical benefits recovered under the Maryland Workers' Compensation Act. The next section of this opinion outlines the circumstances in which that question arises.

## Background

### A.     *The Accident and Insurance Claims*

On January 6, 2017, while driving a vehicle provided by his employer, Mr. Gilliam was rear-ended by another vehicle.  The driver of the other vehicle had a motor vehicle insurance policy with a liability coverage limit of $30,000.[17]

As the driver of a company vehicle, Mr. Gilliam was covered by his employer's motor vehicle insurance policy with Westfield.  The Westfield policy included UM/UIM coverage with a policy limit of $1,000,000.  Mr. Gilliam's employer also carried workers' compensation insurance.[18]

Mr. Gilliam filed a workers' compensation claim with his employer's WC insurer.  Mr. Gilliam's health care providers billed Mr. Gilliam a total of $243,399.33 for services related to his care following the January 6 incident.  In accordance with the Fee Guide of the Workers' Compensation Commission, the WC insurer paid $118,369.15 to the health care providers for the health care services provided to Mr. Gilliam.[19]  As indicated earlier,

---

[17] The driver of the other car, Nicholas Tinsley, had a motor vehicle insurance policy with USAA Auto Insurance Company.  To minimize the number of proper names in the text, we refer to Mr. Tinsley and USAA as the tortfeasor and the tortfeasor's motor vehicle insurer, respectively.

[18] Mr. Gilliam's employer was Ecomize USA, LLC, which had obtained workers' compensation insurance from Chesapeake Employers' Insurance Company.  Again, for simplicity, we refer to them in the text as Mr. Gilliam's employer and the WC insurer.

[19] A cursory review of a spreadsheet of bills and payments that was filed in federal district court and that is appended to Westfield's brief in this Court reveals that, in most

the health care providers were required to accept those amounts as full compensation for their services unless they sought an exception to the Fee Guide; apparently, none of the providers did so. Thus, neither Mr. Gilliam, nor his employer, nor the WC insurer was responsible for paying any additional sums to the health care providers.

In addition to the medical benefits, the WC insurer paid Mr. Gilliam $510,316.47 in other benefits related to the accident.[20] In sum, the WC insurer paid a total of $628,685.62 ($118,369.15 medical payments + $510,316.47 other benefits). The WC insurer asserted a statutory lien under the workers' compensation law in that amount against any compensation related to the accident that Mr. Gilliam might recover from a third-party tortfeasor.

In fact, Mr. Gilliam did recover some compensation from the tortfeasor. The tortfeasor's motor vehicle insurer paid Mr. Gilliam a settlement award of $30,000.00 – the policy limits.[21] The WC insurer accepted one-third of that amount – $10,000.00 – in satisfaction of its statutory lien.[22]

---

instances, there is a substantial difference between the amount billed and the amount paid to a particular provider.

[20] Among other benefits, Mr. Gilliam received temporary total disability benefits in the amount of $117,621.47 and permanent disability benefits in the amount of $375,000.

[21] Westfield consented to that settlement with the tortfeasor's insurer. *See* IN §§19-511(f)-(g), 19-511.1(f)-(g) (requiring consent of UIM insurer for injured person's settlement with tortfeasor's liability insurer in order to preserve UIM claim).

[22] As noted earlier, a WC insurer in some instances may consider it to be in its interest to compromise its lien as part of the employee's settlement with a tortfeasor. *See* Part I.B.3 of this opinion.

Mr. Gilliam also made a claim against Westfield under the UIM portion of his employer's motor vehicle insurance policy with Westfield. As indicated earlier, any recovery Mr. Gilliam might obtain from Westfield would not be subject to a statutory lien by the WC insurer. However, under IN §19-513(e), any recovery from Westfield would be offset by any benefits that Mr. Gilliam received from the WC insurer for which the WC insurer had not been reimbursed.

Mr. Gilliam and Westfield were apparently unable to resolve his UIM claim informally. Litigation ensued.

## B. *The Lawsuit*

On October 29, 2019, Mr. Gilliam filed a one-count complaint in the Circuit Court for Baltimore City asserting a breach of contract claim against Westfield. Westfield removed the case to the federal district court on the basis of the parties' diversity of citizenship. Although Mr. Gilliam's complaint is not in the record before us, we understand that he seeks, as one element of damages in the case, the fair and reasonable value of the medical treatment necessitated by the accident.[23]

Mr. Gilliam's counsel has indicated that he intends to argue at trial that the health care providers' bills represent the fair and reasonable value of the health care services Mr. Gilliam received. Westfield's counsel in turn indicates that Westfield intends to challenge

---

[23] We take judicial notice of the copy of the complaint available on the federal court's PACER system. Paragraph 2 of that complaint alleges that Mr. Gilliam suffered "permanent physical injuries, conscious pain and suffering, medical expenses, lost wages and other damages."

"as appropriate" whether those amounts represent the fair and reasonable value of necessary and appropriate treatment resulting from the accident.

In federal court, the parties filed cross-motions for partial summary judgment concerning the offset based on workers' compensation benefits. The parties agree that the terms of the Westfield policy and the UM/UIM statute allow Westfield to deduct the amount paid by the tortfeasor's insurer ($30,000.00) from the policy limits of UIM coverage provided by the Westfield policy. *See* IN §19-509(g). The parties also agree that, pursuant to IN §19-513(e), Westfield may deduct $618,685.62 in unreimbursed benefits paid by the WC insurer.[24]

What the parties do not agree on – and the matter at issue in the cross-motions for summary judgment – is whether the statute permits Westfield to deduct the difference between the face amount of the bills submitted by the health care providers ($243,399.33) and the amount paid by the WC insurer ($118,369.15) to the providers – that is, $125,030.18. In Westfield's view, that amount is a "recovered benefit" for purposes of IN §19-513(e) and therefore is also deductible from the UIM benefits. In Mr. Gilliam's view, it is not a "recovered benefit" and therefore is not deductible.

---

[24] As noted above, the WC insurer paid a total of $628,685.62 in benefits with respect to the accident and was previously reimbursed $10,000 as a result of its statutory lien relating to third-party recoveries. The unreimbursed payments thus equal $618,685.62.

18

The resolution of this dispute turns on the proper interpretation of IN §19-513(e). For that purpose, the federal district court has certified a question of law concerning the interpretation of the statute that we rephrase as follows:[25]

> For purposes of determining the reduction of a plaintiff's underinsured motorist benefits required by IN §19-513(e), does Maryland law treat a difference between the amount of medical bills submitted by a workers' compensation claimant's health care providers and a lower amount actually paid to the providers by a workers' compensation insurer to satisfy those bills, pursuant to the Fee Guide, as a benefit recovered by the plaintiff under the Maryland Workers' Compensation Act?

The certification order designated Westfield as the appellant in this Court and, accordingly, Mr. Gilliam is to be treated as appellee. Maryland Rule 8-305(b).

---

[25] The federal district court worded the certified question as follows:

> For purposes of determining the reduction of a plaintiff's underinsured motorist benefits required by Maryland Insurance Code §19-513(e), does Maryland law treat the "write-down," or the difference between medical bills submitted by a workers' compensation claimant's health care provider and the lower amount actually paid by a workers' compensation insurer to satisfy those bills, pursuant to the Maryland Guide of Medical and Surgical Fees, as "recovered benefits" to the plaintiff under the Maryland Workers' Compensation Act?

Neither the Maryland workers' compensation law nor the UM/UIM statute includes the phrase "write down." Nor does the workers' compensation law necessarily contemplate that medical bills that exceed payments under the Fee Guide represent the fair and reasonable value of medical services. Accordingly, we have rephrased the question as indicated in the text, as permitted by the statute governing certified questions.

## III

## Discussion

### A.   *Certified Questions of Law*

Under the Maryland Uniform Certification of Questions of Law Act, Maryland Code, Courts & Judicial Proceedings Article ("CJ"), §12-601 *et seq*., this Court may "answer a question of law certified to it by a court of the United States or by an appellate court of another state or of a tribe, if the answer may be determinative of an issue in pending litigation in the certifying court and there is no controlling appellate decision, constitutional provision, or statute of this State."  CJ §12-603; *see also* Maryland Rule 8-305.  For that purpose, we may reformulate the question certified to us, as we have done in this case.  CJ §12-604.  In responding to a certification from another court, this Court resolves only issues of Maryland law, not questions of fact.  *Parler & Wobber v. Miles & Stockbridge*, 359 Md. 671, 681 (2000).

We note that the premise of the question before us is that the fair and reasonable value of the medical services, as ultimately determined in the action by Mr. Gilliam against Westfield in federal court, will exceed the amount actually paid by the WC insurer to Mr. Gilliam's health care providers.  Perhaps that is a reasonable assumption; perhaps it is not.  It is not our role to resolve that factual question in answering a certified question of law.  But we will accept that premise in answering the legal question.[26]

---

[26] In any event, it appears that, even if it were determined that the fair and reasonable value of the medical services provided to Mr. Gilliam is less than the amount paid by the WC insurer to his health care providers, the parties agree that any recovery by Mr. Gilliam

## B. The TravCo Case

Nearly a decade ago, in a case that also arose from an automobile accident and that also resulted in a workers' compensation claim by the injured person,[27] the federal district court certified a somewhat similar question to this Court. *TravCo Ins. Co. v. Williams*, 430 Md. 396 (2013). In *TravCo*, the federal court asked three questions concerning the operation of IN §19-513(e). The third of those questions was "whether, assuming that the law applicable to the underlying automobile accident and to the [workers' compensation] claim treats 'write-downs' of medical bills as [workers' compensation] benefits, such 'write-downs' would reduce benefits payable under §19-513(e) of the Insurance Article." 430 Md. at 412.

---

in the UIM action will be offset by the full amount paid by the WC insurer in unreimbursed medical benefits.

[27] In *TravCo*, the facts were essentially identical to this case except that the injured person was an employee of the District of Columbia government and the applicable workers' compensation benefits were determined by the law of the District of Columbia. In that case, the employee was riding in a car on a work assignment when the car was rear-ended by an unknown driver. She suffered various injuries and recovered workers' compensation benefits from her employer, including the payment of medical expenses. According to the facts certified by the federal district court, her health care providers had applied "write-downs" with respect to those medical expenses.

The injured employee was covered by a Maryland motor vehicle insurance policy issued by TravCo and made a claim under that policy for UM benefits. The administrator of workers' compensation benefits for the District of Columbia asserted a subrogation right – presumably under the workers' compensation law of the District – against any UM benefits recovered by the employee. TravCo conceded that the injured employee was entitled to UM benefits under the policy, but the parties disagreed as to whether the "write-downs" should be included as part of the offset against UM benefits under IN §19-513(e).

In answering that question, this Court assumed that the applicable workers' compensation law treated "write-downs" as "benefits," that the claimant received such benefits, and that the WC insurer had not been reimbursed for those benefits. 430 Md. at 412. In those circumstances, the Court concluded that the offset under IN §19-513(e) would include the amount of the "write-downs." *Id*.

Because the workers' compensation claim in *TravCo* was governed by the law of the District of Columbia, not the law of Maryland, this Court essentially answered the certified question of law with another question of law – are "write-downs" benefits under the workers' compensation law of the District of Columbia? And that was a question that this Court could not answer in the context of a certified question of Maryland law.

The question posed in *TravCo* thus differs from the question in this case in two respects. First, the question posed in TravCo *assumed* that the difference between a medical bill and the amount paid under a workers' compensation law – what was referred to as a "write-down" – could be a benefit under the applicable workers' compensation law. By contrast, that is the essence of the question in this case. Second, the issue in that case ultimately turned on whether the law of the District of Columbia recognized a "write-down" as a benefit under its workers' compensation law. By contrast, in this case, Maryland law governs Mr. Gilliam's workers' compensation claim and we do not assume that a "write down" – however defined – necessarily has any standing as a benefit under that law. The question posed by the federal district court in this case is resolved solely by reference to Maryland law – in particular, IN §19-513(e).

22

## C.    *Statutory Construction of IN §19-513(e)*

Longstanding principles of statutory construction guide the interpretation of IN §19-513(e). The goal of statutory interpretation is to "ascertain and effectuate the real and actual intent of the Legislature." *Gardner v. State*, 420 Md. 1, 8 (2011). One begins with the text of the statute and the statutory scheme of which it is part. *Nationstar Mortg. LLC v. Kemp*, 476 Md. 149, 169 (2021). An examination of the legislative history helps "to confirm conclusions drawn from the text or to resolve ambiguities." *Id.* at 170. Finally, consideration is given to the consequences of alternative interpretations of the statute in order to avoid constructions that are absurd or unreasonable and to "ground[] the court's interpretation in reality." *Blue v. Prince George's County*, 434 Md. 681, 689 (2013) (citation omitted).

### 1.    Text in Context

Under IN §19-513(e), UIM benefits "shall be reduced to the extent that the recipient has recovered benefits under the workers' compensation laws of a state or the federal government for which the provider of the workers' compensation benefits has not been reimbursed." The key phrase in the statute for our purposes is, of course, "workers' compensation benefits." In Mr. Gilliam's view, the phrase is limited to money paid to a workers' compensation claimant or on the claimant's behalf. In Westfield's view, the phrase can include a discount of an expense when the claimant enjoys the discount as a result of the workers' compensation law.

The statutes governing UM/UIM coverage – of which §19-513(e) is part – do not define that phrase. *See* IN §19-501 *et seq.* More broadly, the State insurance law does not

23

define "workers' compensation benefit" specifically or the term "benefit" generally, although the latter word is used throughout the Insurance Article. Nor does the workers' compensation law itself have an applicable general definition of "benefit," although that term appears frequently in that statute. *See* LE §9-101 *et seq*.

In ordinary parlance, the word "benefit" could mean any number of things besides a monetary payment.[28] However, statutory interpretation does not occur in the silo of a single word; the context of a word or phrase in a statute, and other language that relates to the word or phrase, is critical to understanding its meaning. *Nationstar*, 476 Md. at 169. In the context of IN §19-513(e) the offset provided by that statute is against "benefits payable" under UIM coverage (and certain other coverages) – *i.e.*, a sum of money. The "workers' compensation benefit" that comprises the offset thus must be expressible as a monetary amount for the offset to make sense.

Related language in IN §19-513(e) further clarifies the meaning of "workers' compensation benefit" in two ways. First, the offset applies to "the extent that the recipient *has recovered* benefits." IN §19-513(e) (emphasis added). This qualifying language supports a more tangible understanding of the word "benefit" – one that denotes the amount of money already actually paid on behalf of or directly to an injured employee rather than

---

[28] The American Heritage College Dictionary, for example, offers "something that promotes or enhances well-being; an advantage" as a common meaning of "benefit." *See* American Heritage College Dictionary (3d ed. 1993) at 127. In terms of law-related uses of the word, a recent edition of Black's Law Dictionary contains similarly expansive alternative meanings; it includes a definition of "benefit" as an "advantage" or "privilege" as well as "profit or gain" and defines separately almost two dozen phrases including the word. Black's Law Dictionary (9th ed. 2009) at 178-79.

an amount never owed by anyone. *See State Farm*, 283 Md. at 671-72 (stating that "has recovered" generally refers to something obtained); *Parry*, 408 Md. at 145 (statute requires UM/UIM insurers to reduce such benefits "by the amount of workers' compensation benefits *paid…*") (emphasis added).

Second, the statute refers to benefits "for which the provider of the workers' compensation benefits *has not been reimbursed.*" IN §19-513(e) (emphasis added). This clause indicates that the "workers' compensation benefits" received by the claimant are capable of being reimbursed; reimbursement is accomplished by a repayment of a sum previously received. *See TravCo*, 430 Md. at 408-11 (a reimbursement affects amount of offset under IN §19-513(e) only after repayment is made).

While the Workers' Compensation Act also does not define "benefit," the use of the term in that statute supports the same reading. Subtitle 6 of the Act (entitled "Benefits") identifies the different types of workers' compensation benefits available to a claimant (*e.g.*, temporary partial disability, temporary total disability, wage reimbursement, death benefits, vocational rehabilitation benefits). *See* LE §9-601 *et seq.* Part IX of that subtitle, entitled "Medical Benefits," protects against unreasonable medical fees charged to WC insurers and employers. As indicated earlier, the Workers' Compensation Act contemplates that fees paid under that Act are intended to reflect "prevail[ing]" charges in the community for such services and to protect claimants from "unreasonable and excessive charges for health care services." LE §9-663(b); *Queen*, 287 Md. at 346.

There is no reference in the workers' compensation law to "write-downs" or discounts of medical bills – much less any characterization of such a thing as a "benefit"

under that law. Moreover, it is impossible for Mr. Gilliam to "reimburse" the WC insurer for an amount it never paid – *i.e.*, the $125,030.18 difference between what the health care providers billed and what they accepted as full payment for their services. The face amount of a bill generated by a provider simply has no role under the workers' compensation law governing medical benefits. The fact that a "reimbursement" cannot occur – even if Mr. Gilliam for some reason decided to make a voluntary payment of that amount to the WC insurer – indicates that it is not a "workers' compensation benefit" for purposes of IN §19-513(e). Westfield's interpretation of "workers' compensation benefit" to include a discounted portion of a health care provider's fee thus does not comport with the statutory scheme.

### 2. Legislative History

The legislative history of the statute confirms that the phrase "workers' compensation benefit" does not include the amount by which the face amount of a health care provider's bill may differ from the charge allowed by the Fee Guide. For our purposes, there are three key episodes in the legislative history of IN §19-513(e): the original enactment of the offset provision in 1972, its recodification in the Insurance Article in 1996, and its amendment in 2001 to include the non-reimbursement condition.

*1972 – Enactment of compulsory insurance law including benefits coordination.* The predecessor of IN §19-513 was first enacted as part of the UM/UIM provisions of the compulsory motor vehicle insurance law in 1972. Chapter 73, Laws of Maryland 1972. As this Court has previously noted, both the purpose section of that bill's title and a heading in the bill ("Duplication of benefits; coordination of policies") indicated that the

26

coordination of benefits provision was designed to preclude injured persons from receiving duplicate recoveries. *State Farm*, 283 Md. at 674-75 & nn.3-4.[29] The provision relating to coordination with workers' compensation benefits was codified in former Article 48A, §543(d). At that time, the statute provided that the offset of recovered workers' compensation benefits applied against UM/UIM and PIP benefits without any distinction between a situation where the WC insurer had been reimbursed and one where it had not been reimbursed.

*1996 – Recodifying coordination provision as IN §19-513.* In 1996, the offset provision was incorporated in the new Insurance Article and codified as IN §19-513(e). Headings in that bill similarly indicated a legislative intent to avoid duplication of benefits. Chapter 11, Laws of Maryland 1996 at pp. 516-17.[30] The revisor's note states that the provision was recodified without substantive change. *Id.* at p. 518 (Revisor's Note).

*2001 – Amendment of IN §19-513(e) to include reimbursement condition.* Five years later, subsection (e) of the statute, concerning coordination of UM/UIM and PIP benefits with workers' compensation benefits, was amended to add the reimbursement condition that currently appears in the statute. Chapter 392, Laws of Maryland 2001. The purpose paragraph of the title of the bill that became Chapter 392 stated that the bill was

---

[29] The Court noted in *State Farm* that the statutory heading was created by the Legislature itself and was not, as is often the case, simply a caption added by a legal publisher. 283 Md. at 675 n.4.

[30] The general heading given by the General Assembly to IN §19-513 was "Limitations on Recovery of Benefits"; the heading given to subsection (e) was "Reduction due to Workers' Compensation Benefits."

intended to limit the offset under IN §19-513(e) "to the extent that the workers' compensation insurer is able to recover benefits *paid* under workers' compensation laws …." Senate Bill 509 (2001) (emphasis added). The offset thus was to apply only to the extent that the WC insurer has not been reimbursed for benefits paid to or on behalf of the claimant. As a result, if the WC insurer, via its lien, recovered some of the proceeds of injured person's recovery from the tortfeasor, the UM/UIM insurer did not reap a windfall from the coordination provision in IN §19-513(e). According to materials submitted by proponents of the amendment, it was intended to equalize the total compensation received by persons injured in work-related automobile accidents – who, as a result of the receipt of workers' compensation benefits, were subject to the coordination provision – with the total compensation received by persons whose claim for UM/UIM benefits did not result from a work-related accident. *See* Bill File for Senate Bill 509 (2001).

The legislative history of the compulsory insurance law, and of IN §19-513(e) in particular, confirms that the purpose of the UM/UIM coverage mandate was to help ensure both that an injured person is compensated for injuries suffered in an automobile accident and that such benefits would not result in a windfall to that party or to the UM/UIM insurer. To the extent possible, an injured employee covered by both workers' compensation insurance and UM/UIM coverage is to be in the same place at the end of the day as an employee who could recover compensation from a tortfeasor covered by liability insurance with similar limits. We have not been directed to anything in the legislative history of IN §19-513(e) – nor have we found anything – that indicates that the General Assembly

understood that a "write-down" or discount of some sort was an element of the benefits that were being coordinated by that statute.

### 3. Consequences of Alternative Constructions

To compare the alternative interpretations proposed by Westfield and Mr. Gilliam, we consider three simplified scenarios in which a person injured in an automobile accident in the course of the person's employment seeks compensation for those injuries. For that purpose, a little math is helpful. To make the computations easier, we use round numbers.

For each scenario, we assume that the injured person's total damages equal $1,000,000. The WC insurer pays $150,000 under the Fee Guide to compensate health care providers for services provided to the injured person. Consistent with the assumption we are making to answer the certified question, we assume that the "fair and reasonable value" of those health care services is something greater than $150,000 – *i.e.*, $150,000 + *x*. The WC insurer pays $600,000 to the injured person for other benefits. The WC insurer thus pays a total of $750,000 in benefits for which it has a statutory lien as to any liability recovery from the tortfeasor.[31]

The three scenarios are:

(1) an accident involving a fully insured tortfeasor against whom the injured person obtains a judgment of $1,000,000 (*i.e.*, no UIM claim);

(2) an accident involving an underinsured tortfeasor whose insurance covers only $100,000 of the injured person's damages. The injured person makes a UIM claim against

---

[31] For purposes of these scenarios, we disregard allowances for attorney's fees and costs.

a policy with a $1,000,000 policy limit. In this scenario, the offset under IN §19-513(e) includes the difference between the fair and reasonable value of the medical services and what the WC insurer paid the providers – *i.e.*, the offset includes *x* (Westfield's position);

(3) the same facts as scenario 2, except that, in this scenario, the offset under IN §19-513(e) does not include *x* (Mr. Gilliam's position).

(1)     *WC claim and fully insured tortfeasor (no UIM claim).*

The injured person obtains a judgment against the tortfeasor for $1,000,000. The WC insurer has a statutory lien against that judgment in the amount of $750,000. Assuming the WC insurer obtains the full amount of its lien, the injured person nets $250,000 from the judgment against the tortfeasor. This can be represented as follows:

**Net Recovery From Fully Insured Tortfeasor (no UIM Claim)**

| | |
|---|---|
| Damages Award | $1,000,000 |
| WC Insurer Statutory Lien | ($750,000) |
| **Net Recovery** | **$250,000** |

(2)     *WC claim and UIM claim; x part of offset (Westfield's position).*

The injured person recovers $100,000 from the tortfeasor's liability insurer. The injured person also makes a claim against the applicable UIM coverage. Pursuant to IN §19-509(g), the UIM policy limits are reduced by the $100,000 recovered from the tortfeasor's insurer. The WC insurer also recovers its statutory lien in that amount. Assuming that *x* is considered an unreimbursed workers' compensation benefit recovered by the injured person (as Westfield argues), the UIM insurer offsets $150,000 + *x* with respect to workers' compensation medical benefits and $600,000 with respect to other

30

workers' compensation benefits, for a total offset of $750,000 + x$. Because the WC insurer has been reimbursed, via the statutory lien, for $100,000 of its payments, the offset is reduced by that amount and therefore equals $650,000 + x$. The injured person nets $250,000 - x$ from the liability judgment and the claim against the UIM coverage. This can be represented as follows:

**Net Recovery From Tortfeasor and UIM Claim After WC Offset**

| | |
|---|---|
| Tortfeasor Liability Coverage | $100,000 |
| UIM Policy Limits | $1,000,000 |
| Reduction of UIM Limits by Liability Recovery | ($100,000) |
| WC Insurer's Statutory Lien | ($100,000) |
| Offset for WC Benefits: | ($650,000 + $x$) |

| | |
|---|---|
| *WC Non-Medical Payments* | *($600,000)* |
| *WC Medical Payments and Discount* | *($150,000 + x)* |
| *Reimbursed WC Benefits (Lien)* | *$100,000* |

| | |
|---|---|
| **Net Recovery** | **$250,000 – $x$** |

(3)     *WC claim and UIM claim; x not part of offset (Mr. Gilliam's position)*.

The injured person recovers $100,000 from the tortfeasor's liability insurer. The injured person also makes a claim against the applicable UIM coverage. Pursuant to IN §19-509(g), the UIM policy limits are reduced by the $100,000 recovered from the tortfeasor's insurer. The WC insurer also recovers its statutory lien in that amount. Assuming that the offset for workers' compensation medical benefits is limited to the $150,000 actually paid by the WC insurer (as Mr. Gilliam argues), the UIM insurer is to offset $150,000 with respect to workers' compensation medical benefits and $600,000 with respect to other workers' compensation benefits, for a total offset of $750,000. Because

31

the WC insurer has been reimbursed, via the statutory lien, for $100,000 of its payments, the offset amount equals $650,000. The injured person nets $250,000 from the liability judgment and the claim against UIM coverage. This can be represented as follows:

**Net Recovery From Tortfeasor and UIM Claim After WC Offset**

| | |
|---|---:|
| Tortfeasor Liability Coverage | $100,000 |
| UIM Policy Limits | $1,000,000 |
| Reduction of UIM Limits by Liability Recovery | ($100,000) |
| WC Insurer's Statutory Lien | ($100,000) |
| Offset for WC Benefits: | ($650,000) |

| | |
|---|---:|
| *WC Non-Medical Payments* | *($600,000)* |
| *WC Medical Payments* | *($150,000)* |
| *Reimbursed WC Benefits (Lien)* | *$100,000* |

| | |
|---|---:|
| **Net Recovery** | **$250,000** |

These examples illustrate that, in the situation where the responsible tortfeasor is fully insured (scenario 1), the injured person obtains a net recovery of $250,000, after application of the WC insurer's statutory lien. If the tortfeasor was underinsured and the incremental value of the health care services above what was paid by the WC insurer (*i.e.*, $x$) is part of the offset of UIM benefits (scenario 2 – Westfield's position), the injured person has a net recovery from UIM coverage of $250,000 - $x$ after application of the offset. On the other hand, if the offset does not include $x$ (scenario 3 – Mr. Gilliam's position), then the injured person's net recovery from UIM coverage after application of the offset is the same as when the tortfeasor is similarly insured.

As explained above, the goal of the UM/UIM coverage is to place the injured person in the same position as if the person had been injured by a tortfeasor with liability insurance

equivalent to the UIM coverage. Including $x$ as part of the offset under IN §19-513(e) is not consistent with that purpose.[32] This analysis confirms our construction of the text of the statute and is consistent with the legislative history.

4.      Summary

In this case, we do not know what the fact finder in the trial in federal court will determine to be the fair and reasonable value of the health care services Mr. Gilliam received as a result of the accident and therefore to what extent, if at all, that value exceeds the $118,369.15 paid by the WC insurer. In short, we do not know the value of $x$ in this case.[33] Mr. Gilliam will apparently argue that it equals $125,030.18 – the difference between the face amount of the provider bills ($243,399.33) and the amount paid by the WC insurer ($118,369.15); Westfield may argue otherwise. For purposes of answering the question of law presented to us, the value of $x$ does not matter. Whatever it is, it is not part of the offset under IN §19-513(e).

This result places Mr. Gilliam in the same position as if he had been injured by a tortfeasor with insurance coverage equivalent to that of the UIM coverage of his employer's motor vehicle insurance policy. This outcome not only interprets "workers' compensation benefit" consistently with its usage in the UM/UIM statutory scheme, but

---

[32] Under Westfield's interpretation, even if Mr. Gilliam had fully reimbursed the WC insurer for the amounts paid by that insurer, Westfield could still use the offset under IN §19-513(e) to reduce his recovery of UIM benefits by the "written-down" amount.

[33] Similarly, we do not know, and the record does not indicate, what Mr. Gilliam, or someone on his behalf (*e.g.*, health insurance, Medicare, Medicaid) would have paid the health care providers in the absence of a workers' compensation claim.

also serves the legislative purposes of both the workers' compensation law and the UM/UIM law:  compensating the employee, *see Podgurski*, 374 Md. at 148; placing the claimant of UIM coverage in the same position as if the tortfeasor had been sufficiently insured, *see Curtis*, 330 Md. at 174; and avoiding double recovery by the employee from both the WC insurer and the UIM insurer, *see State Farm*, 283 Md. at 675.  We hold that the difference between the amount nominally billed for Mr. Gilliam's health care and the amount the WC insurer actually paid is not a "recovered benefit" under IN §19-513(e).

**IV**

**Conclusion**

The federal district court has asked whether a positive difference between (1) the fair and reasonable value of health care services made necessary by an automobile accident and (2) the amount paid by a workers' compensation insurer in full satisfaction for those services (for which the workers' compensation insurer has not been reimbursed) is, for purposes of the offset against underinsured motorist benefits under IN §19-513(e), a "benefit" recovered by the injured person under the workers' compensation law.

For the reasons set forth in this opinion, the answer to that question is "no."

> **CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE.  COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**