*Traci Spiegel, et al. v. Board of Education of Howard County*, No. 18, September Term, 2021.  Opinion by Gould, J.

**SEPARATION OF POWERS---EDUCATION**

The General Assembly has the constitutional authority to establish a public school system in the manner it sees fit.  That authority includes the creation, modification, and abolishment of local boards of education, as well as the right to determine the qualifications of its members and the manner and methods by which they are selected.  The General Assembly exercised this authority in Md. Code Ann. (2008, 2018 Rep. Vol.), Education Article ("ED") § 3-701, which establishes the student member position of the Howard County Board of Education.  Thus, the student member position is not subject to the Maryland Constitution's electoral requirements.

IN THE COURT OF APPEALS

OF MARYLAND

No. 18

September Term, 2021

_____

TRACI SPIEGEL, ET AL.

v.

BOARD OF EDUCATION
OF HOWARD COUNTY

_____
–
\*McDonald,
Watts,
Hotten,
Booth,
Biran,
Gould,
Harrell, Jr., Glenn T. (Senior Judge,
Specially Assigned),

JJ.

_____

Opinion by Gould, J.

_____

Filed: August 24, 2022

\* McDonald, J., now a Senior Judge, participated in the hearing and conference of this case while being an active member of this Court. After being recalled pursuant to Md. Const., Art. IV, § 3A, he also participated in the decision and adoption of this opinion.



Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

One of the many consequences of the Covid-19 pandemic was the reliance on remote learning for public and private schools in Maryland and elsewhere. The issue of when, and under what circumstances, to resume in-person instruction fueled much debate and disagreement. In November and December of 2020, the Board of Education of Howard County (the "Board" or the "Howard County Board") held three separate votes on motions to resume in-person instruction. Each motion failed by a 4 to 4 stalemate vote, with the student member causing the stalemate by voting against resuming in-person instruction.

Disappointed with the Board's decision to continue with remote learning, two parents, Traci Spiegel and Kimberly Ford, personally, and on behalf of their respective minor children ("petitioners"), filed suit against the Board in the Circuit Court for Howard County, seeking an injunction and declaratory relief to enjoin the student member on the Board from exercising any voting power and declaring that the statute creating the student member position on the Board violates the Maryland Constitution and Declaration of Rights.

The parties cross-moved for summary judgment. Petitioners argued that Section 3-701(f) of the Education Article of the Maryland Code (2008, 2018 Rep. Vol.), which provides for the "election" of a student member by the students in Howard County public schools, violates provisions of the Maryland Constitution. Petitioners reasoned that the Maryland Constitution prohibits persons under 18 years old from voting in elections and precludes any person not registered to vote from holding public office.

Petitioners also asserted that the election process for the student member violates the one-person, one-vote rule because voters—that is, students who are at least 18 years

old—would be entitled to vote in the election of the student member as well as in the general election of the other Board members. Petitioners argued that the one-person, one-vote rule was applicable because the student member position is an elective office on a board that exercises general governmental powers.

Finally, petitioners argued that the election process for the student member violates Article 7 of the Maryland Declaration of Rights, which guarantees qualified citizens the right of suffrage, because adults who are not students in the Howard County public schools are not entitled to vote for the student member.

The Board countered that the Maryland Constitution requires the General Assembly to establish a public education system, but otherwise leaves it to the General Assembly to determine how best to do so. Thus, it argued, the General Assembly was permitted to structure local boards of education as it saw fit, including the creation of a student member position filled through an election by the students at the county's public schools. The Board also argued that petitioners' complaint was time-barred and failed to join necessary parties.

The circuit court issued an 18-page, thorough and well-reasoned memorandum opinion that rejected each of petitioners' arguments. The court held that the selection method of the student member was not subject to the Maryland Constitution's requirements for elections because: (1) although the General Assembly has the constitutional duty to establish the public school system, it is not constitutionally required to do so through county boards of education; and (2) the General Assembly intentionally distinguished the criterion, selection process, and voting rights of the seven elected members from the student member, as was its right. The court also rejected petitioners' one-person, one-vote

2

and general governmental powers arguments on the same grounds: that the student member position is a non-elective position that the General Assembly had the discretion to create. Having resolved petitioners' claims on the merits, the court did not reach the Board's defenses based on the timeliness of petitioners' complaint and their alleged failure to join necessary parties.

On March 26, 2021, petitioners noted an appeal to the Court of Special Appeals of Maryland, but before briefs were filed in that Court, they petitioned this Court for a writ of *certiorari*, which we granted. *Spiegel v. Bd. of Educ. of Howard Cnty.*, 474 Md. 721 (2021).

Petitioners present two questions for our review, which we have consolidated and rephrased as follows:[1]

> Do the qualifications for, and selection process of, the student member of the Howard County Board of Education violate Article I, Sections 1, 5, 7, or 12 of the Maryland Constitution or Article 7 of the Maryland Declaration of Rights?

For the following reasons, which largely track the reasoning of the circuit court, we answer the question in the negative, and therefore affirm the judgment of the circuit court.

---

[1] Petitioners framed their questions as follows:

> Does the Maryland Constitution prohibit minors eleven years of age and older from selecting a member who will hold a binding voting position on the Howard County Board of Education, whether by election, appointment or any other means?

> Does the Maryland Constitution prohibit minors from holding the office of a binding voting position on the Board of Education of Howard County, a board which possesses general governmental power?

3

## DISCUSSION

Under ED § 3-701, the student member of the Board must be a Howard County resident and either a junior or senior student in one of its public schools. ED § 3-701 (f)(1).[2] The student member serves a one-year term beginning on July 1. ED § 3-701 (f)(2).[3] In a nomination and election process that must be approved by the Board, the student member is elected by the County's students in grades 6 through 11. ED § 3-701(f)(3)(iii).[4] The runner up stands ready as "an alternate student member" in the event the elected student member fails to complete the one-year term. ED § 3-701(f)(4).[5]

With certain enumerated exceptions, "the *student member* has the same rights and privileges as an *elected member*." ED § 3-701(f)(5) (emphasis added). To pass, a motion "requires an affirmative vote of [f]ive members if the student member is authorized to vote[,]" and "[f]our members if the student member is not authorized to vote." ED § 3-

---

[2] ED § 3-701(f)(1) provides: "The student member shall be a bona fide resident of Howard County and a regularly enrolled junior or senior year student from a Howard County public high school."

[3] ED § 3-701(f)(2) provides: "The student member shall serve for a term of 1 year beginning on July 1 after the member's election, subject to confirmation of the election results by the county board."

[4] ED § 3-701(f)(3)(iii) provides: "The nomination and election process for the student member [] [s]hall allow for any student in grades 6 through 11 enrolled in a Howard County public school to vote directly for one of the two student member candidates."

[5] ED §§ 3-701(f)(4)(i) and (ii) provide:

The student member candidate who receives the second highest number of votes in the direct election . . . [s]hall become the alternate student member; and . . . [s]hall serve if the student member who is elected is unable, ineligible, or disqualified to complete the student member's term of office.

4

701(g).

The parties agree that if the student member is an elected position subject to the Maryland Constitution's electoral requirements, then section 3-701 would violate the Maryland Constitution in three respects. *First*, ED § 3-701(f)(3)—which permits students under the age of 18 to vote—would violate both Article I, Section 1[6] and Article 7 of the Maryland Declaration of Rights.[7] *Second*, ED § 3-701(f)(3)—which denies adults the right to vote for the student member—would violate Article I, Section 7.[8] *Third*, ED § 3-701(f)(1)—which permits students who are unregistered voters to hold elective office—would violate Article I, Section 12.[9]

---

[6] Md. Const. art. I, § 1 provides:

> Except as provided in Section 2A or Section 3 of this article, every citizen of the United States, of the age of 18 years or upwards, who is a resident of the State as of the time for the closing of registration next preceding the election, shall be entitled to vote in the ward or election district in which the citizen resides at all elections to be held in this State.

[7] Md. Const. Decl. of Rts. art. 7. provides: "[E]very citizen having the qualifications prescribed by the Constitution, ought to have the right of suffrage."

[8] "The General Assembly shall pass Laws necessary for the preservation of the purity of Elections." Md. Const. art. I, § 7.

[9] Md. Const. art. I, § 12 provides:

> Except as otherwise specifically provided herein, a person is ineligible to enter upon the duties of, or to continue to serve in, an elective office created by or pursuant to the provisions of this Constitution if the person was not a registered voter in this State on the date of the person's election or appointment to that term or if, at any time thereafter and prior to completion of the term, the person ceases to be a registered voter

The dispositive issue is whether the selection process for the student member is subject to these constitutional provisions. Petitioners advance two bases for their position that the Maryland Constitution applies. *First*, they contend that the plain language of the relevant provisions of the Education Article reflects the General Assembly's intention to make the selection of the student member an "elected office" subject to such requirements. *Second*, they argue that the student member position is a position of general governmental power, and therefore, the election for that position must comport with the Maryland Constitution.

The Board counters that the constitutional voting and election requirements do not apply to the student position because the General Assembly has wide discretion to determine the composition, qualifications, and selection process for local boards of education. The Board contends that the General Assembly acted well within such discretion in creating the student member position and determining the selection process for same.

We will address these contentions below.

### A

The interpretation of a statute is a question of law that we review without deference. *See SVF Riva Annapolis LLC v. Gilroy*, 459 Md. 632, 639 (2018). Our objective in interpreting statutes is to understand and implement the General Assembly's intent. *See Stoddard v. State*, 395 Md. 653, 661 (2006). We start with the statute's plain language which, if clear and unambiguous, will be enforced as written. *Id.* In doing so, we pay attention to the statute's grammar and sentence structure. *See Mazor v. State Dep't*

6

*of Corr.*, 279 Md. 355, 362 (1977). Further, "we seek to avoid constructions that are illogical, unreasonable, or inconsistent with common sense." *Beyer v. Morgan State Univ.*, 139 Md. App. 609, 631 (2001) (quotations omitted).

We do not read a statutory provision in isolation. Instead, we consider its purpose, goal, and context as a whole. *Papillo v. Pockets, Inc.*, 119 Md. App. 78, 84 (1997). If the words of the statute are ambiguous, we look at its structure, context, relationship with other laws, and legislative history, among other indicia of intent. *Stoddard*, 395 Md. at 662. Even if the words are unambiguous, a review of the legislative history may, in certain contexts, be useful to confirm its interpretation or to rule out "another version of legislative intent alleged to be latent in the language." *Blackstone v. Sharma*, 461 Md. 87, 113 (2018) (quotations omitted).

Petitioners argue that the General Assembly determined that members of local boards of education must either be elected or appointed, and that the Howard County Board would be the former. And because its members are elected, petitioners contend, the election of the Howard County Board student member must comply with the above-mentioned sections of the Maryland Constitution. In support of this argument, petitioners offer a plain language interpretation of ED §§ 3-114 and 3-701.

Petitioners first point to "the title" of ED § 3-114—"County board elections and appointment of members"—as evidence of the "clear import of th[e] statutory scheme[.]" Petitioners then focus on ED § 3-114(a), which identifies 19 counties, including Howard County, as having elected members, and contrasts that with subsections (b) through (f), which identify Baltimore City and the remaining four counties with boards comprised of a

7

combination of elected and appointed members. Petitioners see these provisions as evidence that the "General Assembly understood the difference between board members being selected through an election as opposed to those being appointed." And because the members of the Howard County Board are elected, then, according to petitioners, it naturally follows that the selection of such members, including the student member, is subject to the election and voting provisions of the Maryland Constitution.

Petitioners then apply their plain language analysis to ED § 3-701. Petitioners explain that ED § 3-701 uses the term "election" four times in describing the student member position. Specifically, this section specifies that the student member serves a one-year term "after the member's *election*, subject to confirmation of the *election* results by the county board." ED § 3-701(f)(2) (emphasis added). Further, subsection (f)(3) sets forth the "nomination and *election* process for the student member" and the replacement mechanism for a member who is "unable, ineligible, or disqualified to proceed in the *election*[.]" ED § 3-701(f)(3) (emphasis added). According to petitioners, this further shows the General Assembly knew how to differentiate between elected and appointed board members. Thus, its designation of the Howard County Board as an elected one and its repeated use of "election" in the student member provisions of ED § 3-701, must be credited as intentional.

Petitioners then attempt to draw a connection between the use of the word "election" in ED § 3-701 and sections 1-101(v)(1) and (2) of the Election Law Article ("EL") of the Maryland Annotated Code (2003, 2017 Rep. Vol.). The latter defines "election" as "the process by which voters cast votes on one or more contests under the laws of this State or

8

the United States[,]" and which "includes, unless otherwise specifically provided in this article, all general elections, primary elections, and special elections." EL § 1-101(v)(1)-(2).

Petitioners perceive a consistency with this definition of a general election and the election of the Howard County student board member "because the election [of the student board member] results in the placement in office of an actual elected official." According to petitioners, under the "language of the Education Article, the Election Article, and the Maryland Constitution, it is clear the student member position is 'elected' and not appointed."

Petitioners' argument has this in its favor: ED § 3-114 *does* say that the members of the Board are elected, and ED § 3-701 *does* use "election" four times in setting forth the process for selecting the student member. And if there wasn't more to both sections, petitioners might have a valid point. But there *is* more. Having considered these sections in their entirety, we conclude that the election by students, including minor students, of a student member is not subject to the election and voting provisions of the Maryland Constitution.

The General Assembly first established local county boards of education in 1916. *See* 1916 Md. Laws, ch. 506. At first, the local boards were comprised only of "appointed" members. *See id.* This remained so until 1951, when Montgomery County became the first county to change the composition of its board from appointed to elected members. *See* 1951 Md. Laws, ch. 364. Other counties followed suit, including Howard County in

9

1975.  *See* 1972 Md. Laws, ch. 628.[10]

The recodification of the education-related statutes resulted in the adoption of the Education Article in 1978.  *See* 1978 Md. Laws, ch. 22.  From that point forward, ED § 3-114(a)[11] included Howard County among those whose "members . . . shall be elected[,]" and § 3-114(c) provided that such elections shall be conducted pursuant to "Subtitles 2 through 13 of this title and the Election Law Article."  ED § 3-113 (1978).

In 2007, the General Assembly established a student member position with voting rights on the Howard County Board.  *See* 2007 Md. Laws, ch. 611.  From a drafting standpoint, the way the General Assembly created this new position is instructive.  Nothing changed with respect to the provisions concerning the elected members; ED § 3-114 continued to include Howard County as one of the counties with elected "members" of its Board and made no mention of a "student member."  Similarly, nothing changed in ED § 3-701 with respect to the election and voting rights of the "members."  In other words, the "member" referenced in today's versions of ED §§ 3-114 and 3-701 refers to the same thing as the "member" referenced in the prior versions of those sections.

The addition of the student member was accomplished by amending ED § 3-701.  No longer does ED § 3-701(a) state that the Board "consists of seven members[.]"  Now, instead, that subsection states that the Board "consists of: (i) Seven *elected* members; and

---

[10]   The 1972 session law provided that Howard County would change to an elected board starting in 1975.

[11]  Section 3-114 was originally enacted as Section 3-113.  This section was renumbered as § 3-114 in 1996.  *See* 1996, Md. Laws, ch. 10.

(ii) One *student* member." (emphases added). Further, new provisions were added to ED § 3-701 to provide for the qualifications, selection process, and voting rights for the newly created "student member" position. *See* 2007 Md. Laws, ch. 611.

In other words, just prior to the addition of the student member, the statute recognized just one type of member—aptly called "member"—and there was only one process for selecting such members—an election. With the addition of the student member in 2007, with minor exceptions not relevant here, the General Assembly kept intact the provisions regarding "members"—renamed "elected members"--and simply amended ED § 3-701 to recognize a new type of member—a "student member"—who was chosen through a different election process.

Thus, as the plain language of the current versions of ED §§ 3-114 and 3-701 reflect, and as the evolution of the statutes confirm, the General Assembly knew how to, and in fact did, create two classes of members: one class called "member," and another class called "student member." The General Assembly also knew how to define the qualifications, selection process, and rights attendant to both member classes. And, as explained below, local boards of education are creatures of statute, thus the policy preferences reflected in the General Assembly's addition of a student board member must be respected by this Court.

In the apt words of the circuit court:

The Court cannot conclude that the legislature intended to create a student member position that was elected and yet wholly incapable of complying with constitutional law. Rather the Court's view is that the General Assembly explicitly set apart the student member of the board position and the selection process for same.

11

We agree with the circuit court. Accordingly, we find no constitutional infirmity with the student member provisions of ED § 3-701.

**B**

Petitioners make the additional argument that because of the significant voting rights of the student member of the Howard County Board, the position is one of general government power and, as such, under *Hadley v. Junior College District of Metropolitan Kansas City, Missouri*, 397 U.S. 50, 56 (1970), the constitutional protections of voting rights are triggered. In *Hadley*, appellants were the resident taxpayers of "the Kansas City School District, one of eight separate school districts that . . . combined to form the Junior College District of Metropolitan Kansas City." *Id.* at 51. Pursuant to Missouri law, "school districts [were able to] vote by referendum to establish a consolidated junior college district and elect six trustees to conduct and manage the necessary affairs of that district." *Id.*

The six trustees were apportioned by the number of persons between the ages of six and 20 years old who resided in that district. In the Kansas City School District:

> this apportionment plan result[ed] in the election of three trustees, or 50% of the total number from that district. Since that district contain[ed] approximately 60% of the total school enumeration in the junior college district, appellants brought suit claiming that their right to vote for trustees was being unconstitutionally diluted in violation of the Equal Protection Clause of the Fourteenth Amendment.

*Id.* at 51-52.

Although the Supreme Court held in favor of the aggrieved voters that "Missouri cannot allocate the junior college trustees according to the statutory formula employed in this case[,]" *id.* at 57, the Court offered this caveat that speaks directly to the situation

12

presented here:

> We have also held that where a State chooses to select members of an official body by appointment rather than election, and that choice does not itself offend the Constitution, the fact that each official does not represent the same number of people does not deny those people equal protection of the laws. And a State may, in certain cases, limit the right to vote to a particular group or class of people. As we said before, viable local governments may need many innovations, numerous combinations of old and new devices, great flexibility in municipal arrangements to meet changing urban conditions. We see nothing in the Constitution to prevent experimentation. But once a State has decided to use the process of popular election and once the class of voters is chosen and their qualifications specified, we see no constitutional way by which equality of voting power may be evaded.

*Id.* at 58–59 (cleaned up).

The sentiments expressed in the foregoing passage from *Hadley* apply here. Here, as expressly permitted by *Hadley*, the General Assembly choose not to use the general election process to select the student member. And, as we explain in the next section, the General Assembly has the constitutional authority to establish a public school system in the manner it sees fit. That authority includes the creation, modification, and abolishment of local boards of education, as well as the right to determine the qualifications of its members and the manner and methods by which they are selected. Accordingly, to the extent that *Hadley* has relevance here, it supports our conclusion that ED § 3-701 passes muster under the Maryland Constitution.

## C

The Board maintains that as a creature of statute, the General Assembly had the discretion to establish a public school system in the manner it saw fit, and that it acted well within such discretion with respect to the addition of a student board member on the

13

Howard County Board.  Petitioners disagree, arguing that the General Assembly's discretion is not so broad because local school boards are required by the Maryland Constitution.  We agree with the Board.

The separation of legislative, executive, and judicial powers across the three government branches is guaranteed under Article 8 of the Declaration of Rights.[12]  The power vested in the legislative branch is zealously guarded; unless there is a specific prohibition in the Maryland Constitution or Declaration of Rights that plainly provides otherwise, the General Assembly has complete power "for all purposes of civil government[.]"  *Leonard v. Earle*, 155 Md. 252, 260 (1928), *aff'd*, 279 U.S. 392 (1929).  Thus, the statutes enacted by "the [General Assembly] are presumed to be constitutionally valid[.]"  *In re Adoption/Guardianship of Dustin R.*, 445 Md. 536, 579 (2015) (alteration in original) (quoting *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 218 (1975)).

The interpretation of constitutional provisions is a question of law that we review without deference, *Peterson v. State*, 467 Md. 713, 725 (2020), and under the same canons of construction that we use in interpreting statutes.  *Mahai v. State*, 474 Md. 648, 668 (2021).

In addition, of particular significance here,

a contemporaneous construction placed upon a particular provision of the Maryland Constitution by the legislature, acquiesced in and acted upon

---

[12] Md. Const. Decl. of Rts. art. 8 provides: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

14

without ever having been questioned, followed continuously and uniformly from a very early period, furnishes a strong presumption that the intention is rightly interpreted. And, in considering contemporaneous exposition in construing the meaning of a constitutional provision, Maryland courts have always afforded great weight to debates and proceedings held in the course of constitutional conventions. Of particular importance in this connection are the proceedings of the 1867 Constitutional Convention, as reported in P. Perlman, *Debates of the Maryland Constitutional Convention of 1867* (1923).

*Hornbeck v. Somerset Cnty. Bd. of Educ.*, 295 Md. 597, 620 (1983) (cleaned up).

With these guiding principles in mind, we turn now to Article VIII, Section 1 of the Maryland Constitution, which provides:

The General Assembly, at its First Session after the adoption of this Constitution, shall by Law establish throughout the State a thorough and efficient System of Free Public Schools; and shall provide by taxation, or otherwise, for their maintenance.

Md. Const. art. VIII, § 1.

The text of this section requires the General Assembly to establish the public school system, but provides no direction or guidance on how to do so. This was by intention and design. Maryland's commitment to maintaining a public school system can be traced back to its "early days of statehood," *Hornbeck*, 295 Md. at 621, but for our purposes, we can start with the adoption of the Maryland Constitution of 1864, which established "a statewide system of free public schools[.]" *Id*. at 622.

Under Article VIII, Section 1 of the 1864 Constitution, the Governor was required to "appoint a State Superintendent of Public Instruction with responsibility to develop 'a uniform system of free public schools.'" *Id*. This system was "short-lived[.]" *Id*. at 623. According to the "historical evidence," there was disenchantment with the "large expense"

15

of the public school system, its "centralized administration" and "the performance of the Superintendent of Public Instruction." *Id*. at 624.

The Education Committee members of the constitutional convention of 1867 considered creating a "detailed system" of public schools, but as reflected in contemporaneous press reports, ultimately a consensus emerged to defer to the legislature "to adopt the system it deemed best." *Id*. at 627 (citing *The Baltimore American and Commercial Advertiser*, June 12 and 22, 1867 at 4). For example, on June 22, 1867, the *Baltimore Gazette* attributed the following statement to Delegate Joseph A. Wickes:

> I am in favor of reserving to the Legislature full authority to provide for a system of education in each county and the city of Baltimore according to the local wants of each section, and opposed to any amendment which should require the Legislature to provide a uniform system. The construction of the Article reported by the committee leaves, in my opinion, no doubt upon this question. The report does not provide for a uniform system, but only for a thorough and efficient system of education, and I entertain no doubt that under the power contained in this section the Legislature has full authority over the subject. There is also, Mr. President, full authority reserved to the Legislature to provide by taxation for the maintenance of public schools. This authority is properly confided to the Legislature, as they will be able to decide the amount of taxes necessary to be levied and to apportion the taxes to the new assessment which has been made or will hereafter be perfected. No system of public schools can be perfected in a constitution. The details of the system cannot be given. It is a question which no man in his closet can satisfactorily arrange, but must depend upon experience and be subject to amendment and alteration when the practical operation of this system demonstrates the necessity for such amendment.

*Id*.

Thus, Section 1 of Article VIII of the Maryland Constitution of 1867—which has survived intact to this day—transferred responsibility for the public school system to the

16

General Assembly, which was required to "establish throughout the State a thorough and efficient" public school system. The details were left to the General Assembly.[13]

Pursuant to this mandate, "the county boards [of education] were created by the General Assembly as an integral part of that State system[.]" *Chesapeake Charter, Inc. v. Anne Arundel Cnty. Bd. of Educ.*, 358 Md. 129, 136 (2000). Unlike the offices created by the Constitution, "where the office is of legislative creation, the General Assembly can modify, control or abolish it, and within these powers is embraced the right to change the mode of appointment." *Calvert Cnty. Comm'rs v. Monnett*, 164 Md. 101, 104–05 (1933) (cleaned up).

This principle was applied in *State v. Falcon*, where this Court was faced with a constitutional challenge to an amendment of the statute governing the selection of members of the Anne Arundel County Board of Education—section 3-110(b) of the 2015 Education Article of the Maryland Code (1978, 2014 Repl. Vol., 2015 Supp.). 451 Md. 138 (2017).

---

[13] To be clear, the discussion in *Hornbeck* is not the only word on the historical development of this section. In fact, one leading authority has observed there "are at least three different views on the historical context and appropriate change from a 'uniform system of free public schools' . . . to the requirement for 'a thorough and efficient System of Free Public Schools.'" Dan Friedman, *The Maryland State Constitution* 90 (2011). One view is that the "1867 convention felt that the uniform system of 1864 was too expensive, deprived local government of control of schools, and was a subject better left to the legislature." *Id.* (citing *Hornbeck*, 295 Md. 624-28). Under this view the change represented an express repudiation of the former system. *Id.*

A second view is that "the only real criticism of the 1864 provision was the autocratic manner in which it was administered by [the] State Superintendent . . . ." *Id.* Under this view, "the 1867 convention did not reject the uniform system . . . ." *Id.* A third view "suggests that the change . . . was the result of a political compromise struck between reformers who wanted a state-controlled system and antireformers who wanted a purely local system." *Id.*

There, in finding that the amendment did not violate the Maryland Constitution, we observed that,

> under Article II, § 10, when the General Assembly "has created an office by Act of Assembly, the [General Assembly] can designate by whom and in what manner the person who is to fill the office shall be appointed." Comm'n on Med. Discipline v. Stillman, 291 Md. 390, 409, 435 A.2d 747, 757 (1981) (citation and internal quotation marks omitted). Thus, "[w]here the office is of legislative creation, the [General Assembly] can modify, control or abolish it, and within these powers is embraced the right to change the mode of appointment." Id. at 410, 435 A.2d at 758 (citation omitted).

Id. at 170.

This principle applies with equal force here. Accordingly, the plain text of Article VIII, Section 1, the historical context in which it was adopted, and almost a century of precedent from this Court, all confirm that the General Assembly has broad discretion to control and modify the composition of local boards of education, which includes the creation and selection process of student board members as it sees fit. That being the case, we agree with the Board and the circuit court that the General Assembly had the constitutional authority to create a student member position for the Howard County Board, establish a process for the election of such member by students in the Howard County public school system, and grant such student member voting rights.

## CONCLUSION

For the foregoing reasons, we hold that the provisions of section 3-701 of the Education Article concerning the student member position on the Howard County Board of Education do not run afoul of the Maryland Constitution.

> **JUDGMENT OF THE CIRCUIT COURT OF HOWARD COUNTY AFFIRMED. COSTS TO BE**

18

PAID BY PETITIONERS.